PATRICK J. McARDLE AND PATRICK HART, RESPONDENTS,
v. BENJAMIN ATHA, JOHN ILLINGSWORTH AND
ALBERT O. HEADLEY, APPELLANTS.

*Executory contract — right of the vendee to object to the quality of the goods after their
delivery and acceptance.*

The plaintiffs, through one Duffy, agreed to sell scrap steel to the defendants,
at two cents per pound. There were to be fifteen tons of tool and fifteen tons
of file steel to every twenty tons of other scrap steel. The tool and file steel
was heavier and more valuable than the other. The plaintiffs had the right
to deliver an unlimited amount of steel in these proportions. They delivered
first eighty and then twenty tons. The last lot was assorted by Duffy, at the
defendants' request, after its delivery. There was so little tool and file steel
delivered as to reduce the value of the lot to one and one-third cents per
pound.

In an action brought by the plaintiffs to recover for the steel so delivered, the
referee held that the contract being an executory one was to be deemed per-
formed, the steel having been, after an opportunity to examine it, accepted by
the defendants, and that the plaintiffs were entitled to recover the full contract
price.

*Held,* that this was error.

APPEAL from a judgment in favor of the plaintiffs, entered upon
the report of a referee in an action to recover for certain "mixed
steel" sold and delivered by the plaintiffs to the defendants.

*B. S. Clark,* for the appellants.

*E. A. Brewster,* for the respondents.

BARNARD, P. J.:

The evidence shows that one John S. Duffy agreed to sell to the
defendants fifty tons of scrap steel at two cents per pound. The
steel was to be delivered in the following proportions : Fifteen
tons tool steel and fifteen tons file steel to twenty tons of other
scrap steel. Subsequently Duffy found at Newburgh a lot of steel
scrap of about eighty tons, which belonged to the plaintiffs, which
they agreed Duffy might sell to defendants for them on a commis-
sion. Duffy then agreed to sell the eighty tons in the proportions
aforesaid. The steel was subsequently delivered, and was not in the
proportions agreed upon. The plaintiffs then agreed to sell twenty

more tons to defendants on the same terms and in the same proportions, and they had the right to deliver an unlimited amount of steel in those proportions and at that agreed price. Upon the delivery of the last twenty tons the steel was not assorted, and Duffy, on a request from defendants, did assort the lot. The tool steel and the file steel is the most valuable, being heavy steel. Of the entire amount delivered, there was such a deficiency of this heavy steel from the agreed proportions as to reduce the value of the entire lot delivered from two cents to one and one-third cents per pound.

The referee decides that the defendants must pay the entire agreed price for the steel, notwithstanding the non-delivery of the proper proportions of heavy steel. This conclusion seems to be erroneous. The learned referee puts the case upon those authorities which hold that an executory contract is deemed performed by an acceptance of the subject of the contract after opportunity to examine. It seems to me that those cases do not include the present one. The case of *Reed* v. *Randall* (29 N. Y., 358) was an executory contract for the sale of tobacco. The tobacco was delivered as merchantable, and was accepted, without objection, in execution of the contract. It was held that the vendee could not sue for damages based upon the unmerchantable character of the tobacco.

The case of *Beck* v. *Sheldon* (48 N. Y., 365) was one similar in principle. The contract called for No. 1 and No. 2 pig iron at certain prices. The quality of pig iron is determined by the granulation. The skilled employer determines by the fracture to which grade it belongs. The grades thus determined were delivered as the grades called for; and it was held that after acceptance the contract was performed, and that the grades received and accepted were to be deemed thus contracted for. To the same purport is *Dounce* v. *Dow* (64 N. Y., 411).

The case of *The Dutchess Company* v. *Harding* (49 N. Y., 321) has no relevancy to the question presented. In that case the vendor had induced an acceptance of sumac by fraud. The case of *McCormick* v. *Sarson* (45 N. Y., 265) holds that after lumber is received as prime and merchantable it is too late to object. The contract was performed when the lumber was received in execution of it.

In the case under consideration there is no question made as to the quality of the goods or as to the performance of the contract. The proper proportions were not delivered so as to entitle the plaintiff to the price agreed upon. The steel was not received in execution of the contract. There was no limit to the amount which plaintiff might deliver, and there was no requirement that the heavy steel could not be kept to the time of the last delivery. The acceptance was of light steel and as such it was delivered and invoiced. To hold that such a delivery is to be held a delivery of heavy steel does not seem to be just. The plaintiffs under such a rule could obtain a premium for violating his contract. The case is not one of warranty, strictly so called. There is no question presented whether the steel delivered was as recommended, but whether the plaintiffs have performed their contract so as to entitle them to the contract-price. If the contract in reference to the proportions is a warranty, there was no obligation to return the goods but the defendants might recover their damages as an offset. (*Hawkin* v. *Pemberton*, 51 N. Y., 198.)

The judgment should be reversed, and a new trial granted, costs to abide event, and order of reference vacated.

DYKMAN and CULLEN, JJ., concurred.

So ordered.